**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

JORGE ARMANDO GAITAN HERNANDEZ,

Plaintiff, Case No. __________

-against-

MAIN STREET GOURMET DELI & GRILL INC.,
d/b/a Fresh Grill & Gourmet Deli,
MAIN STREET GOURMET DELI INC.,
NAILA MIAN, individually,
NAJEEB M. MIAN, individually,
JOHN DOE 1, individually,
JOHN DOE 2, individually,

Defendants.

---

# COMPLAINT

## JURY TRIAL DEMANDED

## PRELIMINARY STATEMENT

1. Plaintiff Jorge Armando Gaitan Hernandez ("Plaintiff"), by and through his attorneys, Stillman Legal, P.C., brings this action against Main Street Gourmet Deli & Grill Inc., d/b/a Fresh Grill & Gourmet Deli, and Main Street Gourmet Deli Inc. (together, the "Corporate Defendants"), and against Naila Mian, Najeeb M. Mian, John Doe 1, and John Doe 2 (together, the "Individual Defendants," and with the Corporate Defendants, "Defendants"), for unpaid overtime compensation, unpaid wages, unpaid spread-of-hours pay, statutory damages, damages for unlawful retaliation, and related relief under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq.; the New York Labor Law ("NYLL"), §§ 190 et seq., 215, and 650 et seq.; and the regulations promulgated thereunder, including the Hospitality Industry Wage Order, 12 N.Y.C.R.R. Part 146.

2. Plaintiff was employed by Defendants as a dishwasher, stock worker, and counter worker at a delicatessen and grill located at 276 Main Street, White Plains, New York 10601. Throughout his employment from approximately mid-March 2023 through approximately October 15, 2026, Defendants willfully failed and refused to pay Plaintiff the legally mandated overtime compensation, failed to pay spread-of-hours premiums, failed to pay Plaintiff anything at all for his final workweek, failed to provide the required wage notices and wage statements, and failed to maintain adequate payroll records. Defendants paid Plaintiff in cash for nearly the entirety of his employment, with no paystubs, no wage notices, and no time records. When Plaintiff complained that he was being exploited, Defendants threatened to report him to United States immigration authorities and to procure a false accusation of misconduct against him.

**JURISDICTION AND VENUE**

3. This Court has original federal question jurisdiction over Plaintiff's FLSA claims pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

4. This Court has supplemental jurisdiction over Plaintiff's NYLL claims pursuant to 28 U.S.C. § 1367(a), as those claims arise out of the same case or controversy and share a common nucleus of operative facts with Plaintiff's federal claims.

5. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred at Defendants' place of business located at 276 Main Street, White Plains, New York 10601, which is within the Southern District of New York, and because Defendants reside in and are subject to personal jurisdiction in this District.

6. Because the events giving rise to this action occurred in Westchester County, this action is properly designated for the White Plains Courthouse.

**PARTIES**

7. Plaintiff Jorge Armando Gaitan Hernandez is a natural person and was, at all relevant times, an adult resident of the City of White Plains, County of Westchester, State of New York. Plaintiff was employed by Defendants at their delicatessen and grill from approximately mid-March 2023 through approximately October 15, 2026.

8. Defendant Main Street Gourmet Deli & Grill Inc. is a domestic business corporation organized and existing under the laws of the State of New York, formed on or about June 10, 2011 under Section 402 of the Business Corporation Law, assigned Department of State identification number 4105340, and in active status. Its county of formation is Westchester. Its principal executive office, as reflected in its most recent biennial statement filed with the New York Department of State on or about September 23, 2025, is 276 Main Street, White Plains, New York 10601. Since on or about January 9, 2014, this defendant has maintained an active assumed name filing for “Fresh Grill & Gourmet Deli,” assumed name identification number 453831.

9. Defendant Main Street Gourmet Deli Inc. is a domestic business corporation organized and existing under the laws of the State of New York, formed on or about September 19, 1996 under Section 402 of the Business Corporation Law, assigned Department of State identification number 2067354, and in active status. Its county of formation is Westchester. Its principal executive office, as reflected in the records of the New York Department of State, is 276 Main Street, White Plains, New York 10601.

10. Upon information and belief, the Corporate Defendants operated the delicatessen and grill at 276 Main Street, White Plains, New York 10601 as a single integrated enterprise. They share the same principal executive office, the same trade name, the same storefront, the

same employees, and common ownership and management. Upon information and belief, they operated under common control, with centralized control of labor relations, and with interrelated operations and finances. Each Corporate Defendant was Plaintiff's employer within the meaning of the FLSA, 29 U.S.C. § 203(d), and the NYLL, § 2(6), and each is jointly and severally liable for the violations alleged herein.

11. Defendant Naila Mian is a natural person who is identified in the records of the New York Department of State as the Chief Executive Officer of Main Street Gourmet Deli & Grill Inc., with an address at 276 Main Street, White Plains, New York 10601, as reflected in the biennial statement filed on or about September 23, 2025. Upon information and belief, at all relevant times she was an owner, officer, and principal of that corporation and exercised operational control over the business, including the power to hire and fire employees, to set and supervise work schedules, to determine the rate and method of payment of wages, and to maintain—or to fail to maintain—employment records. Upon information and belief, she was involved in establishing and maintaining the policies and practices under which Plaintiff was paid, including the decision to pay Plaintiff in cash without overtime premiums, paystubs, or time records.

12. Defendant Najeeb M. Mian is a natural person who is identified in the records of the New York Department of State as the Chief Executive Officer of Main Street Gourmet Deli Inc., with an address at 276 Main Street, White Plains, New York 10601. Upon information and belief, at all relevant times he was an owner, officer, and principal of that corporation and exercised operational control over the business, including the power to hire and fire employees, to set and supervise work schedules, to determine the rate and method of payment of wages, and to maintain—or to fail to maintain—employment records. Upon information and belief, he was

involved in establishing and maintaining the policies and practices under which Plaintiff was paid, including the decision to pay Plaintiff in cash without overtime premiums, paystubs, or time records.

13. Defendants John Doe 1 and John Doe 2 are natural persons whose true names are not presently known to Plaintiff. During Plaintiff's employment, Defendants' business was directed day to day by an individual Plaintiff knew as "Yamal," who was identified to Plaintiff as the owner of the business, and, beginning at a time presently unknown to Plaintiff but prior to the end of his employment, by a second individual Plaintiff knew as "Mou," who was identified to Plaintiff as a new partner in the business and who gave Plaintiff most of his daily instructions. Each of these individuals exercised operational control over the business, including the power to hire and fire employees, to set and supervise work schedules, and to determine the rate and method of payment of wages. Upon information and belief, each was involved in establishing and maintaining the policies and practices under which Plaintiff was paid, including the decision to pay Plaintiff in cash without overtime premiums, paystubs, or time records. John Doe 1 is sued in the place of the individual known as "Yamal," and John Doe 2 is sued in the place of the individual known as "Mou," in each case to the extent that individual is a person other than Naila Mian or Najeeb M. Mian. Plaintiff will amend this Complaint to substitute the true name of each such individual when it is ascertained through discovery.

14. Each Individual Defendant is an "employer" within the meaning of the FLSA, 29 U.S.C. § 203(d), and the NYLL, § 2(6), and is jointly and severally liable with the Corporate Defendants for the violations alleged herein.

## FLSA COVERAGE

15. At all relevant times, Defendants have been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. § 203(s)(1)(A).

16. Defendants operated a delicatessen and grill that prepared and sold breakfast and lunch food and beverages to the public by counter service, seven days a week. In the course of that business Defendants and their employees, including Plaintiff, regularly handled, sold, and otherwise worked on goods and materials that had been moved in and produced for interstate commerce, including meat, dairy products, produce, bread and baked goods, coffee, packaged beverages, paper goods, cleaning supplies, and commercial kitchen equipment, all of which were produced outside the State of New York and transported in interstate commerce before reaching Defendants' place of business. Defendants also regularly accepted payment by credit and debit card, which required the use of interstate payment-processing networks.

17. Upon information and belief, Defendants had annual gross volume of sales made or business done of not less than $500,000.00, as required for enterprise coverage under 29 U.S.C. § 203(s)(1)(A)(ii). This belief is based on the scale and character of Defendants' operation, including the employment of approximately ten employees, continuous operation seven days a week from the early morning through the late afternoon, a full breakfast and lunch menu prepared to order, and a steady volume of walk-in and delivery-platform business at a storefront on a commercial corridor in downtown White Plains.

18. In addition, and in the alternative, Plaintiff was individually engaged in commerce or in the production of goods for commerce in that his work regularly and recurrently required him to receive, stock, handle, and prepare goods that had moved in interstate commerce, and to use instrumentalities of interstate commerce in the course of serving Defendants' customers.

19. At all relevant times, Defendants operated a "restaurant" within the meaning of 12 N.Y.C.R.R. § 146-3.1(b), in that Defendants operated an eating place that prepared and offered food and beverage for human consumption on its premises and by counter service to the public. Defendants were therefore engaged in the "hospitality industry" within the meaning of 12 N.Y.C.R.R. § 146-3.1(a), and Plaintiff was an employee covered by the Hospitality Industry Wage Order, 12 N.Y.C.R.R. Part 146.

20. At all relevant times, Plaintiff was a non-exempt employee within the meaning of the FLSA and the NYLL. Plaintiff's work was manual and routine, did not involve the exercise of discretion or independent judgment with respect to matters of significance, and did not fall within any exemption from the overtime requirements of the FLSA or the NYLL.

## FACTUAL ALLEGATIONS

### A. Plaintiff's Employment and Duties

21. Plaintiff commenced his employment with Defendants in or about mid-March 2023 at Defendants' delicatessen and grill located at 276 Main Street, White Plains, New York 10601.

22. Plaintiff was hired to work as a dishwasher and to receive and stock grocery and food inventory.

23. In the course of his employment, Defendants expanded Plaintiff's duties well beyond the terms on which he had been hired. In addition to washing dishes and stocking inventory, Plaintiff was directed to open the store in the early morning, to serve customers at the counter beginning at approximately 5:00 a.m., to restock and organize the store beginning at approximately 10:00 a.m., and to return to counter and shift coverage beginning at approximately

noon. Plaintiff was further required to cover the position of any other worker who failed to appear for a scheduled shift.

24. Defendants entrusted Plaintiff with a key to the premises because Plaintiff was responsible for opening the store.

25. Plaintiff remained at work after other employees had completed their shifts and been permitted to leave.

26. Plaintiff's regular work schedule was six days per week, Sunday through Friday, with Saturdays off.

27. Plaintiff's regular hours of work were from approximately 4:00 a.m. to approximately 4:00 p.m., a daily spread of approximately twelve hours. Defendants did not establish any fixed meal period for Plaintiff, did not provide him with any bona fide meal break during which he was completely relieved of all duties, and Plaintiff's duties ran continuously through the workday. Accordingly, all twelve hours constituted compensable work time.

28. Plaintiff contends, and will demonstrate at trial, that he regularly worked not less than approximately sixty hours per workweek, resulting in not less than approximately twenty hours of overtime each workweek for which no overtime premium was paid. Because Defendants kept no record of Plaintiff's hours, the precise number of hours Plaintiff worked in each workweek is presently within Defendants' exclusive knowledge, and Plaintiff reserves the right to prove a greater number of hours on the evidence adduced in discovery.

29. Plaintiff's employment ended on or about October 15, 2026, under circumstances described more fully below.

**B. Defendants' Unlawful Pay Practices**

30. From approximately mid-March 2023 through approximately December 2024, Defendants paid Plaintiff a flat rate of $17.00 per hour for all hours worked, regardless of the number of hours worked in a given workweek.

31. From approximately January 2025 through the end of his employment, Defendants paid Plaintiff a flat rate of $18.00 per hour for all hours worked, regardless of the number of hours worked in a given workweek.

32. Defendants paid Plaintiff in cash for nearly the entirety of his employment. In 2026, Defendants made some payments to Plaintiff by Zelle transfer and by check; the checks Defendants gave to Plaintiff were dishonored upon presentment, causing Plaintiff to incur bank fees and to be deprived of wages on which he had relied. No payroll deductions for taxes, Social Security, or any other withholdings were made. No paystubs or wage statements of any kind were provided to Plaintiff at any time.

33. Defendants never paid Plaintiff an overtime premium at a rate of one and one-half times his regular rate of pay for hours worked in excess of forty per workweek. For all hours worked in excess of forty per workweek, Defendants paid Plaintiff only his straight-time rate.

34. When Plaintiff was paid $17.00 per hour, his overtime rate should have been $25.50 per hour, resulting in a per-hour overtime deficit of $8.50. When Plaintiff was paid $18.00 per hour, his overtime rate should have been $27.00 per hour, resulting in a per-hour overtime deficit of $9.00.

35. Defendants never paid Plaintiff the additional one hour of pay at the basic minimum hourly rate for each day on which his spread of hours exceeded ten hours, as required by 12 N.Y.C.R.R. § 146-1.6. Plaintiff's daily spread of hours—the interval between the

beginning and the end of his workday—was approximately twelve hours on each of the six days he worked each week, and therefore exceeded ten hours on each such day.

36. Defendants' payment of Plaintiff in cash, with no overtime premium, no spread-of-hours pay, no paystubs, and no time records, constituted a willful and systemic scheme to deprive Plaintiff of his lawfully earned wages.

**C. Defendants' Failure to Pay Plaintiff for His Final Workweek**

37. Plaintiff worked a full and regular workweek for Defendants during the week ending on or about October 15, 2026, working approximately sixty hours consistent with his regular schedule.

38. Defendants never paid Plaintiff any wages whatsoever for that workweek. As of the filing of this Complaint, Defendants have failed and refused to pay Plaintiff for the work he performed during his final workweek, and those wages remain due and owing.

**D. Defendants' Failure to Maintain Records, Provide Wage Notices, and Provide Wage Statements**

39. Defendants did not require Plaintiff to punch in or out, and did not otherwise record the hours Plaintiff worked. Upon information and belief, Defendants failed to make, keep, and preserve accurate payroll records as required by 29 U.S.C. § 211(c), NYLL § 195(4), and 12 N.Y.C.R.R. § 146-2.1. Plaintiff does not possess copies of any time records, and no such records were ever provided to him.

40. Defendants failed to provide Plaintiff with the wage notice required by NYLL § 195(1) at the time of hire or at any time during his employment. Specifically, Defendants never provided Plaintiff with a written notice containing his rate or rates of pay, his overtime rate of pay, the basis of his wage payment, the regular pay day designated by the employer, the

employer's name and any trade names used, the employer's physical address and mailing address, the employer's telephone number, or any other information required by NYLL § 195(1).

41. Defendants failed to provide Plaintiff with accurate wage statements with each payment of wages, as required by NYLL § 195(3). Defendants provided Plaintiff with no wage statements whatsoever at any time during his employment.

42. Defendants' failure to provide the notices and statements required by NYLL § 195 caused Plaintiff concrete and particularized harm beyond the statutory violations themselves. Because Defendants never informed Plaintiff in writing of his regular rate, his overtime rate, or the number of hours for which he was being paid, and never furnished him any statement identifying the hours credited to him in any pay period, Plaintiff had no means of determining what he was owed for the long hours he worked, no means of detecting that Defendants were paying him straight time for his overtime hours, and no means of identifying the shortfall at the time it occurred. Had Plaintiff been given the required notices and statements, he would have learned that his overtime hours were being paid at his straight-time rate and would have raised the underpayment with Defendants and sought the wages he was owed while he was still employed, rather than continuing to work for more than three years while the unpaid overtime accumulated. Defendants' failure to provide the required notices and statements also deprived Plaintiff of the documentation of his rate and hours that he needed to establish the wages owed to him, and has required him to reconstruct more than three years of unrecorded hours from memory.

**E. Plaintiff's Complaint and Defendants' Retaliatory Threats**

43. Before the end of his employment, in or about September or October 2026, Plaintiff complained to Defendants that he was being subjected to labor exploitation, in that he

was being required to work excessive hours and to perform work far beyond the duties for which he had been hired without being paid what he was owed.

44. Plaintiff made that complaint in good faith and reasonably believed that the conduct about which he complained violated the New York Labor Law.

45. In response to Plaintiff's complaint, Defendants, acting through the individual Plaintiff knew as "Mou," threatened Plaintiff that if he reported Defendants' conduct, they would contact United States immigration authorities concerning Plaintiff.

46. Defendants further threatened that if Plaintiff reported their conduct, they would lodge a complaint falsely accusing Plaintiff of misconduct toward customers of the business.

47. Defendants made those threats for the purpose of intimidating Plaintiff and deterring him from reporting Defendants' violations of the Labor Law or otherwise asserting his rights. As a direct result of Defendants' retaliatory threats and the hostile conditions they created, Plaintiff's working conditions became so intolerable that a reasonable person in his position would have felt compelled to resign, and Plaintiff was in fact compelled to end his employment shortly thereafter.

**F. Willfulness**

48. Defendants' violations of the FLSA were willful within the meaning of 29 U.S.C. § 255(a). Defendants knew or showed reckless disregard for the fact that their pay practices violated the FLSA. Defendants operated a long-established commercial food service business in Westchester County with approximately ten employees, were subject to widely publicized minimum wage and overtime requirements, and nevertheless chose to pay Plaintiff in cash with no overtime premium, no paystubs, no wage notices, and no record of his hours. Defendants' failure to make or keep any record of the hours Plaintiff worked, and their threat to contact

immigration authorities when Plaintiff complained, further evidence their deliberate intent to evade their legal obligations.

49. Defendants' violations of the NYLL were likewise willful, and Defendants had no good faith basis for believing that their underpayment of Plaintiff complied with the law, entitling Plaintiff to liquidated damages of one hundred percent of the total amount of wages due and owing, pursuant to NYLL §§ 198(1-a) and 663(1).

## STATUTE OF LIMITATIONS

50. For Plaintiff's FLSA claims, the applicable statute of limitations is three years because Defendants' violations were willful. 29 U.S.C. § 255(a). The FLSA lookback period therefore extends to three years before the filing of this Complaint.

51. For Plaintiff's NYLL wage claims, the applicable statute of limitations is six years. NYLL §§ 198(3), 663(3). The NYLL lookback period therefore encompasses the entirety of Plaintiff's employment with Defendants. For Plaintiff's retaliation claim, the applicable statute of limitations is two years. NYLL § 215(2)(a).

## DAMAGES ALLEGATIONS

52. The damages set forth herein are based on Plaintiff's reported schedule and the wage rates Defendants actually paid, as calculated by Plaintiff's counsel, and are subject to proof at trial. Additional damages may be owed based on evidence to be adduced in discovery, including evidence that Plaintiff worked more hours each week than the sixty hours on which these calculations are based.

53. At all relevant times, the basic minimum hourly rate applicable in Westchester County was $15.00 through December 31, 2023; $16.00 from January 1, 2024 through

December 31, 2024; $16.50 from January 1, 2025 through December 31, 2025; and $17.00 from January 1, 2026. NYLL § 652; 12 N.Y.C.R.R. § 146-1.2.

54. For the period from approximately mid-March 2023 through approximately October 8, 2026, the total unpaid overtime compensation owed to Plaintiff is not less than $32,540.00, calculated period by period using the rates Defendants actually paid and the overtime rates required by law.

55. For Plaintiff's final workweek, ending on or about October 15, 2026, the total unpaid wages owed to Plaintiff are not less than $1,260.00, consisting of $720.00 in straight-time wages for the first forty hours worked and $540.00 in overtime wages for the twenty hours worked in excess of forty.

56. The total unpaid wages owed to Plaintiff under the FLSA and the NYLL are therefore not less than $33,800.00.

57. The total unpaid spread-of-hours compensation owed to Plaintiff for the NYLL six-year lookback period is not less than $18,102.00, calculated period by period using the basic minimum hourly rates in effect during each period and the six qualifying workdays in each workweek.

58. Under NYLL §§ 198(1-a) and 663(1), Plaintiff is entitled to liquidated damages in the amount of one hundred percent of the total unpaid wages and unpaid spread-of-hours compensation. Under the FLSA, 29 U.S.C. § 216(b), Plaintiff is entitled to liquidated damages in the amount of one hundred percent of the unpaid minimum wages and unpaid overtime compensation owed during the FLSA limitations period.

59. For Defendants' failure to provide the wage notice required by NYLL § 195(1), Plaintiff is entitled to statutory damages of fifty dollars for each workday that the violation

occurred or continued to occur, not to exceed $5,000.00. NYLL § 198(1-b). Plaintiff worked approximately 1,122 workdays for Defendants, and the statutory maximum of $5,000.00 therefore applies.

60. For Defendants' failure to provide the wage statements required by NYLL § 195(3), Plaintiff is entitled to statutory damages of two hundred fifty dollars for each workday that the violation occurred or continued to occur, not to exceed $5,000.00. NYLL § 198(1-d). The statutory maximum of $5,000.00 therefore applies.

61. For Defendants' retaliation, Plaintiff is entitled to all relief available under NYLL § 215(2)(a), including liquidated damages of not more than $20,000.00, lost compensation, compensatory damages for emotional distress, costs, and reasonable attorneys' fees.

62. Plaintiff is entitled to pre-judgment interest on unpaid NYLL wages and spread-of-hours compensation at the statutory rate of nine percent per annum. N.Y. C.P.L.R. §§ 5001, 5004.

## FIRST CAUSE OF ACTION
## FLSA — Overtime Violations (29 U.S.C. § 207)

63. Plaintiff repeats and realleges each and every allegation set forth above as though fully set forth herein.

64. At all relevant times, Defendants were Plaintiff's employers within the meaning of the FLSA, 29 U.S.C. § 203(d), and Plaintiff was a non-exempt employee.

65. Defendants violated 29 U.S.C. § 207(a)(1) by failing to pay Plaintiff overtime compensation at a rate of not less than one and one-half times his regular rate of pay for all hours worked in excess of forty hours per workweek. For hours worked in excess of forty per workweek, Defendants paid Plaintiff only his straight-time rate, and for his final workweek Defendants paid him nothing at all.

66. Defendants' violations were willful within the meaning of 29 U.S.C. § 255(a), entitling Plaintiff to a three-year statute of limitations.

67. As a result of Defendants' violations, Plaintiff is entitled to recover unpaid overtime wages, an equal amount as liquidated damages, reasonable attorneys' fees, and costs of the action pursuant to 29 U.S.C. § 216(b).

**SECOND CAUSE OF ACTION**
**FLSA — Minimum Wage Violations (29 U.S.C. § 206)**

68. Plaintiff repeats and realleges each and every allegation set forth above as though fully set forth herein.

69. Defendants violated 29 U.S.C. § 206(a) by failing to pay Plaintiff any wages whatsoever for the hours he worked during his final workweek, ending on or about October 15, 2026, with the result that Plaintiff's effective rate of pay for that workweek was zero dollars per hour, which is less than the federal minimum wage of $7.25 per hour.

70. Defendants' violation was willful within the meaning of 29 U.S.C. § 255(a).

71. As a result of Defendants' violation, Plaintiff is entitled to recover unpaid minimum wages, an equal amount as liquidated damages, reasonable attorneys' fees, and costs of the action pursuant to 29 U.S.C. § 216(b).

**THIRD CAUSE OF ACTION**
**NYLL — Overtime Violations (NYLL §§ 650 et seq.; 12 N.Y.C.R.R. § 146-1.4)**

72. Plaintiff repeats and realleges each and every allegation set forth above as though fully set forth herein.

73. At all relevant times, Defendants were Plaintiff's employers within the meaning of NYLL § 2(6), and Plaintiff was a non-exempt employee employed in the hospitality industry.

74. Defendants violated NYLL §§ 650 et seq. and 12 N.Y.C.R.R. § 146-1.4 by failing to pay Plaintiff overtime compensation at a wage rate of one and one-half times his regular rate for all hours worked in excess of forty hours in a workweek. For Plaintiff's final workweek, Defendants failed to pay him any wages whatsoever, including any overtime compensation for the hours he worked in excess of forty.

75. Defendants' violations were willful and were not taken in good faith, entitling Plaintiff to liquidated damages equal to one hundred percent of the underpayment, pursuant to NYLL §§ 198(1-a) and 663(1).

76. As a result of Defendants' violations, Plaintiff is entitled to recover unpaid overtime wages, liquidated damages, pre-judgment interest at nine percent per annum, reasonable attorneys' fees, and costs of the action pursuant to NYLL §§ 198 and 663.

**FOURTH CAUSE OF ACTION**
**NYLL — Failure to Pay Wages (NYLL §§ 191, 198)**

77. Plaintiff repeats and realleges each and every allegation set forth above as though fully set forth herein.

78. Plaintiff performed work for Defendants during his final workweek, ending on or about October 15, 2026, and thereby earned wages that became due and payable. At all relevant times, Plaintiff was a "manual worker" within the meaning of NYLL § 190(4), in that he spent more than twenty-five percent of his working time performing physical labor.

79. Defendants violated NYLL § 191 by failing to pay Plaintiff the wages he earned during that workweek, and by withholding the entirety of those wages without his written authorization and without any lawful basis.

80. Defendants' violations were willful and were not taken in good faith, entitling Plaintiff to liquidated damages equal to one hundred percent of the unpaid wages, pursuant to NYLL § 198(1-a).

81. As a result of Defendants' violations, Plaintiff is entitled to recover his unpaid wages, liquidated damages, pre-judgment interest at nine percent per annum, reasonable attorneys' fees, and costs of the action pursuant to NYLL § 198.

**FIFTH CAUSE OF ACTION**

**NYLL — Spread-of-Hours Violations (12 N.Y.C.R.R. § 146-1.6)**

82. Plaintiff repeats and realleges each and every allegation set forth above as though fully set forth herein.

83. Defendants operated a restaurant within the meaning of 12 N.Y.C.R.R. § 146-3.1(b), and Plaintiff was employed in the hospitality industry. Under 12 N.Y.C.R.R. § 146-1.6, an employee of a restaurant is entitled to one additional hour of pay at the basic minimum hourly rate on each day on which the spread of hours exceeds ten hours, regardless of the employee's regular rate of pay.

84. Plaintiff's spread of hours—the interval between the beginning and the end of his workday—exceeded ten hours on each of the six days he worked each workweek throughout his employment.

85. Defendants failed to pay Plaintiff the required spread-of-hours premium for any workday during the NYLL six-year lookback period, resulting in unpaid spread-of-hours compensation of not less than $18,102.00.

86. As a result of Defendants' violations, Plaintiff is entitled to recover unpaid spread-of-hours pay, liquidated damages of one hundred percent pursuant to NYLL § 198(1-a), pre-judgment interest at nine percent per annum, reasonable attorneys' fees, and costs.

**SIXTH CAUSE OF ACTION**
**NYLL — Wage Notice Violations (NYLL § 195(1))**

87. Plaintiff repeats and realleges each and every allegation set forth above as though fully set forth herein.

88. NYLL § 195(1) requires that an employer provide each employee, at the time of hiring, a written notice containing, among other information, the employee's rate or rates of pay, the overtime rate of pay, the basis of the wage payment, the regular pay day designated by the employer, and the employer's name, trade names, physical and mailing address, and telephone number.

89. Defendants failed to provide Plaintiff with the required wage notice at the time of hire or at any time during his employment.

90. Defendants' failure caused Plaintiff the concrete injuries described above, including his inability to learn, identify, and seek payment of the overtime wages Defendants were withholding from him while he remained employed.

91. As a result, Plaintiff is entitled to recover statutory damages of fifty dollars for each workday that the violation occurred or continued to occur, up to a maximum of $5,000.00, plus reasonable attorneys' fees and costs, pursuant to NYLL § 198(1-b).

**SEVENTH CAUSE OF ACTION**
**NYLL — Wage Statement Violations (NYLL § 195(3))**

92. Plaintiff repeats and realleges each and every allegation set forth above as though fully set forth herein.

93. NYLL § 195(3) requires that an employer furnish each employee with a statement with every payment of wages listing, among other information, the dates of work covered by that payment, the rate or rates of pay and the basis thereof, gross wages, deductions, net wages, the

regular hourly rate or rates of pay, the overtime rate or rates of pay, the number of regular hours worked, the number of overtime hours worked, and the employer's name, address, and telephone number.

94. Defendants paid Plaintiff in cash and failed to provide Plaintiff with any wage statements whatsoever during his employment.

95. Defendants' failure caused Plaintiff the concrete injuries described above, including his inability to learn, identify, and seek payment of the overtime wages Defendants were withholding from him while he remained employed.

96. As a result, Plaintiff is entitled to recover statutory damages of two hundred fifty dollars for each workday that the violation occurred or continued to occur, up to a maximum of $5,000.00, plus reasonable attorneys' fees and costs, pursuant to NYLL § 198(1-d).

**EIGHTH CAUSE OF ACTION**
**NYLL — Unlawful Retaliation (NYLL § 215)**

97. Plaintiff repeats and realleges each and every allegation set forth above as though fully set forth herein.

98. NYLL § 215(1)(a) prohibits an employer, or any other person, from discharging, threatening, penalizing, or in any other manner discriminating or retaliating against any employee because the employee has made a complaint to his employer that the employer has engaged in conduct that the employee reasonably and in good faith believes violates a provision of the Labor Law.

99. NYLL § 215(1)(a) further provides that to threaten, penalize, or in any other manner discriminate or retaliate against an employee includes threatening to contact or contacting United States immigration authorities, or otherwise reporting or threatening to report an employee's suspected citizenship or immigration status, to a federal, state, or local agency.

100. Plaintiff engaged in protected activity when he complained to Defendants that he was not being paid overtime wages for hours worked in excess of forty per week and was being required to perform work beyond his hired duties without proper compensation, a complaint that he made in good faith and that concerned conduct he reasonably believed violated the Labor Law.

101. Defendants retaliated against Plaintiff because of that complaint by threatening to contact United States immigration authorities concerning Plaintiff if he reported Defendants' conduct, and by threatening to lodge a complaint falsely accusing Plaintiff of misconduct toward customers of the business if he reported Defendants' conduct. Defendants' retaliatory threats rendered Plaintiff's working conditions so intolerable that he was constructively discharged from his employment.

102. As a result of Defendants' retaliation, Plaintiff suffered fear, anxiety, and emotional distress, and is entitled to all relief available under NYLL § 215(2)(a), including liquidated damages of not more than $20,000.00, lost compensation, compensatory damages for emotional distress, costs, and reasonable attorneys' fees.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Jorge Armando Gaitan Hernandez respectfully requests that this Court enter judgment in his favor and against Defendants, jointly and severally, as follows:

1. Awarding Plaintiff unpaid overtime compensation under the FLSA and the NYLL in an amount to be determined at trial, but not less than $33,080.00 (comprising $32,540.00 in unpaid overtime through approximately October 8, 2026, and $540.00 in unpaid overtime for Plaintiff's final workweek);

2. Awarding Plaintiff unpaid minimum wages and unpaid wages for his final workweek under the FLSA and the NYLL in an amount to be determined at trial, but not less than $1,260.00;

3. Awarding Plaintiff unpaid spread-of-hours compensation under 12 N.Y.C.R.R. § 146-1.6 in an amount to be determined at trial, but not less than $18,102.00;

4. Awarding Plaintiff liquidated damages under NYLL §§ 198(1-a) and 663(1) of one hundred percent of the total unpaid wages and unpaid spread-of-hours compensation, and liquidated damages under 29 U.S.C. § 216(b) of one hundred percent of the unpaid minimum wages and unpaid overtime compensation owed for the FLSA limitations period, to the extent not duplicative of NYLL liquidated damages awarded for the same wages;

5. Awarding Plaintiff statutory damages of $5,000.00 for wage notice violations under NYLL §§ 195(1) and 198(1-b);

6. Awarding Plaintiff statutory damages of $5,000.00 for wage statement violations under NYLL §§ 195(3) and 198(1-d);

7. Awarding Plaintiff liquidated damages of up to $20,000.00, lost compensation, and compensatory damages for emotional distress for Defendants' retaliation under NYLL § 215(2)(a);

8. Enjoining Defendants, to the extent permitted by law, from continuing to violate the wage-and-hour and anti-retaliation requirements of the FLSA and the NYLL with respect to their current and future employees;

9. Awarding Plaintiff pre-judgment interest on all unpaid wages and spread-of-hours compensation recoverable under the NYLL at the rate of nine percent per annum pursuant to N.Y. C.P.L.R. §§ 5001 and 5004;

10. Awarding Plaintiff post-judgment interest as provided by law;

11. Awarding Plaintiff reasonable attorneys' fees, costs, and disbursements pursuant to 29 U.S.C. § 216(b) and NYLL §§ 198, 215, and 663; and

12. Granting such other and further relief as this Court deems just and proper.

**JURY DEMAND**

Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

STILLMAN LEGAL, P.C.

By: Lina Stillman, Esq

Lina Stillman, Esq.
42 Broadway, 12th Floor
New York, New York 10004
Telephone: (212) 832-1000
Email: ls@stillmanlegalpc.com

Attorneys for Plaintiff

Dated: New York, New York
November 1, 2026